Norman RICHEY, Denise L. Richey, and Norman Richey, III, by and through his natural guardians, Plaintiffs–Appellants,

v.

William G. CHAPPELL,
Defendant–Appellee.

No. 11A01–9010–CV–00412.

Court of Appeals of Indiana,
First District.

June 12, 1991.

Keith R. Lyman, Terre Haute, for plaintiffs-appellants.

Mark D. Hassler, Frey, Hunt, Hassler & Lorenz, Terre Haute, Stephen J. Peters, William N. Ivers, Stewart & Irwin, Indianapolis, for defendant-appellee.

BAKER, Judge.

Norman Richey, Denise Richey and Norman Richey, III (collectively, the Richeys) bring an interlocutory appeal of the trial court's discovery order. The question presented for our review is whether the trial court, after having granted the Richeys the right to inspect certain documents, abused its discretion when it denied the Richeys access to other documents possessed by Indiana Farmers Mutual Insurance Company (Farmers Mutual). We affirm in part, and reverse in part.

## FACTS

On February 13, 1988, the Richeys were involved in an accident when their automobile collided with an automobile operated by William Chappell. The auto Chappell was driving was owned by Marilyn Meads, and insured by Farmers Mutual. The Richeys obtained counsel shortly after the accident, and filed a complaint against Chappell in February of 1990.

The Richeys requested the production of documents from Farmers Mutual, a nonparty. Farmers Mutual and Chappell objected to the request. The trial court then viewed the documents *in camera*, and ordered Farmers Mutual to disclose eight documents.[1] Disclosure was denied for the remaining 91 documents. The Richeys appeal the trial court's order in this interlocutory appeal pursuant to Ind.Appellate Rule 4(B)(6).

## DISCUSSION AND DECISION

This court applies an abuse of discretion standard when reviewing trial court rulings on discovery issues. *Schierenberg v. Howell–Baldwin* (1991), Ind.App. No. 571 N.E.2d 335; *DeMoss Rexall Drugs v. Dobson* (1989), Ind.App., 540 N.E.2d 655; *Cigna–INA/Aetna v. Hagerman–Shambaugh* (1985), Ind.App., 473 N.E.2d 1033, *trans. denied.* "An abuse of discretion occurs when the trial court reaches a conclusion against the logic and natural inferences to be drawn from the facts of the case." *DeMoss, supra* 540 N.E.2d at 656.

We are tempted to find the Richeys' request for production of documents did not set forth the items to be inspected with reasonable particularity as required by Ind. Trial Rule 34(B), and that the documentation the trial court ordered disclosed was more than they were entitled to receive based upon their general request. The general request for documents was merely a "shotgun" approach, an approach which forces the trial court to wade through documents in search of discoverable ones, and then forces the appellate courts to wade through the same documents and second-guess the trial court's decisions. Because Farmers Mutual has abandoned the "reasonable particularity" argument on appeal, however, we must address the issues as raised by the parties.

The Richeys argue the trial court erred in denying production of the documents because Farmers Mutual did not prove the requested documents were prepared in an-

---

1. The trial court actually ordered disclosure of seven documents; however, there were two copies of one of the seven documents.

ticipation of litigation.[2] Ind.Trial Rule 26(B)(3) provides a party may obtain discovery of documents prepared in anticipation of litigation only upon a showing that the party seeking discovery has a substantial need and is unable to obtain the substantial equivalent of the materials without undue hardship. Even with such a showing, a party may not discover the mental impressions, conclusions, opinions, or legal theories of the other party. T.R. 26(B)(3); *Burr v. United Farm Bureau Mut. Ins. Co.* (1990), Ind.App., 560 N.E.2d 1250, *trans. denied.*

■ The burden is on the party seeking protection to demonstrate that documents are protected from discovery. *Burr, supra.* We initially note our supreme court has stated an *in camera* inspection by a court on a discovery question is an act to be exercised at the trial court's discretion which requires the trial court to expend a great amount of time and energy. *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 526. It is a rare procedure, and "should remain rare." *Id.* at 531. The *Canfield* court was speaking in terms of discovery and the physician-patient privilege; however, the comments are equally applicable here. Because the *in camera* procedure requires a great deal of a court's time and energy, the party asserting the claimed privilege must put forth some effort. A claim of the work product privilege must be asserted on a document by document basis, and a party "may not rely upon a blanket claim of privilege for all documents contained in its file." *Burr, supra,* 560 N.E.2d at 1255. "Submitting a voluminous batch of documents for *in camera* review does not satisfy a proponent's burden of establishing some or all of the documents deserve work product protection." *Id.* at 1255. In cases involving large numbers of documents, the proponent of the work product protection must present the matter *in camera* to the court in a form which itemizes each document, provides a factual summary of its contents,

and provides a justification for withholding the document. *Id.*

In this case, Farmers Mutual submitted almost 100 documents for *in camera* inspection. Farmers Mutual did not summarize the contents of each document, and did not give a justification for withholding each document. Rather, it handed over the documents and waited for the trial court to do the work. The trial court would have been within its discretion to "deny the requested protection out of hand in the interests of judicial economy." *Id.* at 1255. Our rules of procedure do not intend or anticipate that the trial and appellate courts will do all the work in determining whether documents are privileged. The trial court chose to review all 99 of the documents, however, and we will reluctantly do the same.

The trial court in this case, in determining these documents were non-discoverable, could have determined either that the documents were not relevant, that they were prepared in anticipation of litigation and the Richeys had not demonstrated the appropriate need and hardship necessary to obtain such documents, or that the documents contained the mental impressions, conclusions, opinions, or legal theories of the other party.

■ Most of the documents deemed non-discoverable consisted of memos from one insurance agent to another indicating what action had occurred on the file. Many of these documents simply noted that a conversation was had with the Richeys or with their attorney. There are several documents indicating the amount of insurance reserves to be maintained. These documents, inadmissible evidence at trial and not reasonably calculated to lead to discovery of admissible evidence, were not discoverable. *Schierenberg, supra.* Another large group of documents consisted of·copies of the Richeys' medical bills and expenses, which surely the Richeys had access to themselves, as it appears to this court that these documents were submitted

---

**2.** We note Farmers Mutual urges us to create an attorney/insurer/client privilege, and to hold all communications at issue were privileged and

thus non-discoverable. We have declined to do so in the past, *see Schierenberg, supra,* and *DeMoss, supra,* and we decline to do so today.

by the Richeys. Finally, some of the documents consist of Farmer Mutual's employees' opinions and conclusions as to the Richeys' claims. These documents are not discoverable. T.R. 26(B)(3); *Burr, supra.* Thus, the trial court could have properly concluded the documents were not discoverable on the above grounds.

■■■■ The trial court also could have concluded the documents were prepared in anticipation of litigation, and that the Richeys had not demonstrated the appropriate need or necessary hardship to obtain the documents. The fact that an insurance company undertakes an investigation does not automatically require a finding that the investigation was conducted in anticipation of litigation, however. *Id.* In the context of insurance investigations, there is a point at which the focus of an insurer's work turns from evaluation of a claim to preparation for litigation. *Id.* It is difficult, if not impossible, to develop a bright line test indicating when the transition from evaluation to preparation has occurred. This court has stated:

> A document generated or obtained by an insurer is entitled to the protection from discovery found in T.R. 26(B)(3) if the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation and not, even though litigation may already be a prospect, because it was generated as part of the company's regular operating procedure.

*DeMoss, supra,* 540 N.E.2d at 658 (emphasis in original). *See also Schierenberg, supra,* and *Burr, supra.* The decision as to what point preparation of documents is done in anticipation of litigation rather than for the purpose of claim evaluation turns on the facts of each case. *Burr, supra.* The trial court certainly could have found those documents in this case which were created after the Richeys threatened to sue were created in anticipation of litigation. Farmers Mutual argues, however, that none of the documents are discoverable because they all were created in antici-

pation of litigation. Farmers Mutual contends it anticipated litigation because it was aware that the Richeys obtained an attorney shortly after the accident occurred. This knowledge certainly could be a factor in determining whether an insurance company anticipated litigation, but does not mandate a finding that documents were prepared in anticipation of litigation. *Burr, supra.* Other factors that may be considered include consultation between an insurance company and an attorney, *id.,* the insurance company's denial of a claim, *DeMoss, supra,* and other subjective claims of the insurance company that litigation was anticipated. No single factor can be dispositive in every case.

■■■■ We do not argue with the proposition that the Richeys' early retention of counsel could lead an insurance company to believe litigation was imminent and thus lead to the non-discoverability of most of the documents. Farmers Mutual has not demonstrated, however, that Chappell's statement taken on February 18, 1988, was anything other than a part of the company's regular operating procedure.[3] Farmers Mutual took the 10–minute statement of Chappell, the driver of its insured's vehicle, five days after the accident. It would seem to be normal business practice for an insurer to take a statement from its insured when the insured is involved in an accident, and Farmers Mutual did or said nothing to indicate it was not its normal practice to take such a statement after the occurrence of an accident. Farmers Mutual alleges it took the statement on the day it discovered the Richeys had obtained counsel and thus the statement was taken in anticipation of litigation. The test, however, is whether the statement was taken because litigation was anticipated or because it was part of the company's regular operating procedure. *Id.* If it was taken as part of the regular operating procedure, it was not taken because of the prospect of litigation even if litigation was anticipated, and the statement would thus not be protected. Because Farmers Mutual did not

---

**3.** Chappell's statement is relevant, and does not contain the mental impressions, conclusions, opinions, or legal theories of the other party.

prove this statement was taken because of the litigation as opposed to its normal operating procedure, we are compelled to find the trial court abused its discretion in finding the statement was protected from discovery, and order that it be given to the Richeys pursuant to their request for documents from a non-party. We affirm all other 98 determinations made by the trial court.

Thus, the judgment is affirmed in part, reversed in part, and remanded with instructions to the trial court to order Farmers Mutual to give Chappell's statement of February 18, 1988, to the Richeys. Costs are assessed one-half to the Richeys and one-half to Farmers Mutual.

RATLIFF, C.J., and SHARPNACK, J., concur.