

**FILED**

Dec 30 2019, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Paul L. Jefferson
Bradley J. Buchheit
McNeely Stephenson
Indianapolis, Indiana

James P. Buchholz
Tourkow, Crell, Rosenblatt & Johnston, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES
THOMAS KELLEY, CHARLES SURACK, SWEETWATER SOUND, INC., KYLE WITWER, WITWER CONSTRUCTION, INC., ANDREA SCHENKEL, WILLIAM P. SCHENKEL, IV, DARRICK HOOPINGARNER, AND AARON GAROFOLA

Mark E. GiaQuinta
Sarah L. Schreiber
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
JOSEPH OSCAR MITSON

Stephen J. Peters
David I. Rubin
Kroger Gardis & Regas, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA UNIVERSITY HEALTH

Norris Cunningham
Kimberly E. Schroder
Katz Korin Cunningham, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lutheran Health Network of Indiana, LLC, Lutheran Health Network Investors, LLC, and CHSPSC, LLC,

*Appellants-Plaintiffs,*

v.

Brian Bauer, John Doe #1, and John Doe #2-5,

*Defendants,*

and

Thomas Kelley, Charles Surack, Sweetwater Sound, Inc., Kyle Witwer, Witwer Construction, Inc., Andrea Schenkel, William P. Schenkel, IV, Darrick Hoopingarner, Aaron Garofola, and Joseph Oscar Mitson,

*Non-Parties-Appellees,*

and

Indiana University Health,

*Non-Party Intervenor-Appellee*

December 30, 2019

Court of Appeals Case No. 19A-MI-654

Appeal from the Allen Superior Court

The Honorable Nancy Eshcoff Boyer, Judge

Trial Court Cause No. 02D01-1711-MI-1018

**Crone, Judge.**

# Case Summary

[1]     Lutheran Health Network of Indiana, LLC, Lutheran Health Network Investors, LLC, and CHSPSC, LLC (collectively "Lutheran"), filed a complaint in Tennessee state court against former CEO of Lutheran Health Network ("LHN") Brian Bauer and five John Does. Pursuant to Indiana Trial Rule 28(E), Lutheran initiated an ancillary proceeding in Allen Superior Court in Indiana ("the trial court") to assist its discovery in the Tennessee lawsuit. Lutheran asked the trial court to authorize service of subpoenas for testimony and documents on various non-parties domiciled in Indiana, which the court did. Indiana University Health ("IU Health") was allowed to intervene in the ancillary proceeding to protect its interests with respect to confidential and proprietary documents and information that Lutheran requested from non-parties who were IU Health employees. Lutheran, the non-parties, and IU Health repeatedly requested either enforcement of or relief from the discovery requests. The Tennessee lawsuit was dismissed while discovery matters were still pending in the trial court. Pursuant to Indiana Trial Rule 34(C)(3), some of the non-parties and IU Health (collectively "Appellees") requested damages resulting from Lutheran's discovery requests, including attorneys' fees and costs. The trial court granted the requests over Lutheran's objection and awarded fees to the non-parties and fees and costs to IU Health.

[2]     Lutheran now appeals, arguing that the trial court lacked jurisdiction to award fees and costs; that the trial court erred in ruling that Appellees are entitled to fees under Trial Rule 34(C)(3); that the trial court erred in ruling that IU Health

has standing to seek fees and costs under that rule; and that the trial court never afforded it an opportunity to challenge the reasonableness of the requested fees. We hold that the trial court did not lack jurisdiction to award fees and costs; that the trial court did not err in ruling that Appellees are entitled to fees under Trial Rule 34(C)(3); that the trial court did not err in ruling that IU Health has standing to seek fees and costs under that rule; and that Lutheran must be given an opportunity to challenge the reasonableness of the requested fees. Accordingly, we affirm in part and remand for further proceedings.

## Facts and Procedural History[1]

[3] The relevant facts are undisputed. Bauer is a resident of Fort Wayne, Indiana, and was the CEO of LHN and Lutheran Hospital of Indiana. In 2016, Bauer and a group of Fort Wayne physicians unsuccessfully attempted a buyout of Lutheran. LHN terminated Bauer, who then consulted with IU Health about entering the Fort Wayne hospital market. On November 2, 2017, Lutheran filed a complaint in Tennessee state court against Bauer and five John Does. The complaint alleged that the John Does were "a singular or group of anonymous online commenters that post on the social media network Facebook under the pseudonym 'Sajin Young'" and that the Facebook profile "was created for the purposes of: (1) falsely portraying Lutheran and LHN; and (2) intimidating and harassing Lutheran's employees and creating a hostile

---

[1] We held oral argument on December 5, 2019, at Jay County High School. We thank the staff and students for their hospitality and interest, and we thank counsel for their excellent advocacy.

work environment to drive away qualified employees from Lutheran's businesses in Fort Wayne[,]" which is in Allen County. Lutheran's App. Vol. 2 at 50, 64. The complaint asserted claims for breach of contract, defamation, trade and commercial disparagement, unfair and deceptive business practices, and tortious interference with existing and prospective business relationships. The complaint also asserted that Bauer consented to personal jurisdiction in Tennessee pursuant to a stock option agreement that was the basis for the breach of contract claim. The complaint included a prayer for injunctive relief and damages.

[4] Lutheran filed a motion to expedite discovery, which the Tennessee court granted. Lutheran petitioned the trial court to open an ancillary proceeding in Allen County pursuant to Indiana Trial Rule 28(E), which provides in pertinent part,

> **Assistance to Tribunals and Litigants Outside this State.** A court of this state may order a person who is domiciled or is found within this state to give his testimony or statement or to produce documents or other things, allow inspections and copies and permit physical and mental examinations for use in a proceeding in a tribunal outside this state. The order may be made upon the application of any interested person or in response to a letter rogatory and may prescribe the practice and procedure, which may be wholly or in part the practice and procedure of the tribunal outside this state, for taking the testimony or statement or producing the documents or other things. To the extent that the order does not prescribe otherwise, the practice and procedure shall be in accordance with that of the court of this state issuing the order.

[5]     On November 8, the trial court granted Lutheran's petition and issued an order authorizing Lutheran to serve subpoenas issued by the Tennessee court for testimony and production of documents on non-parties Dr. William Cast and Northeast Indiana Citizens for Healthcare Excellence, Inc. ("NICHE").[2]  Those subpoenas, and the other subpoenas issued in this proceeding, contain references to the Tennessee Rules of Civil Procedure, but the trial court's discovery orders do not prescribe the practice or procedure for taking testimony or producing documents otherwise than in accordance with the Indiana Trial Rules.  The subpoenas ordered Dr. Cast to appear with specified documents for a deposition on specified topics in Fort Wayne on November 21.  The requested documents and deposition topics primarily involved communications or information regarding Sajin Young, NICHE, Bauer, and IU Health.  Dr. Cast and NICHE moved to quash the subpoena due to scheduling conflicts, and the parties rescheduled the deposition for December 19.

[6]     Meanwhile, on November 29, the trial court authorized the service of additional subpoenas on non-parties Aaron Garofola and Ozzie Mitson, who were ordered to produce similar documents and appear for depositions on

---

[2] According to the complaint, NICHE "is an Indiana domestic nonprofit corporation with its principal place of business in Fort Wayne[.]"  Lutheran's App. Vol. 2 at 51.  "NICHE was created in June 2017" by Dr. Cast and others and "is a self-proclaimed 'group of concerned individuals,' whose stated focus 'is to hold accountable Community Health Systems.'"  *Id.*  Sajin Young posted derogatory comments about Lutheran on NICHE's Facebook page.  *Id.* at 65.

similar topics on December 20.  Both Garofola and Mitson had been employed by Lutheran, and Mitson was now employed by IU Health.

[7] On December 6, Bauer moved to dismiss the Tennessee lawsuit.  NICHE, Dr. Cast, Garofola, and Mitson moved to quash their subpoenas, arguing that the ancillary proceeding would be rendered moot if Bauer's motion was successful. On December 14, the trial court granted the motions to quash over Lutheran's objection.

[8] Also on December 14, the trial court granted IU Health's motion to intervene in the ancillary proceeding; at a hearing on that date, Lutheran stated that it had no objection to the motion.  12/14/17 Tr. Vol. 2 at 6.  In its motion to intervene, IU Health noted that it had been subpoenaed by Lutheran in a related ancillary proceeding in Marion Superior Court and that it had filed a motion to quash the subpoena, which ultimately was partially successful, on the basis that Lutheran was "seeking confidential and proprietary information from IU Health that is not relevant to the Tennessee Lawsuit."  Lutheran's App. Vol. 2 at 120.  IU Health learned that Lutheran had subpoenaed Mitson and made discovery requests "that would potentially implicate documents or information Mr. Mitson created, sent or received while an employee of IU Health."  *Id.*  IU Health requested, and was granted, "a protective order requiring that any documents or information to be produced by Mr. Mitson related to IU Health be approved by IU Health prior to its production to the parties in this action, so that IU Health has an opportunity to assert relevant objections or privileges that may apply."  *Id.* at 122.

[9] On December 27, Lutheran amended its complaint to add a breach of loyalty claim against Bauer. On February 14, 2018, the Tennessee court granted Bauer's motion to dismiss as to the disparagement, deceptive business practices, and breach of loyalty claims, but denied the motion as to the remaining claims and issued a temporary injunction against Bauer as to certain activities.

[10] On April 10, Lutheran filed a motion for authorization to serve subpoenas for testimony and documents on Dr. Cast, NICHE, and Mitson, as well as on the following additional non-parties: former Lutheran (and subsequent IU Health) employees Jennifer Ann Garver and Dr. Geoff Randolph, former LHN board members Thomas Kelley and Charles Surack, and Surack's company Sweetwater Sound, Inc.[3] The trial court granted the motion on April 18. Also on that date, Mitson filed a motion to quash or limit his subpoena, which was withdrawn pending negotiations regarding its timing and scope.

[11] On May 11, Lutheran filed a motion for authorization to serve subpoenas for testimony and documents on non-parties Witwer and Witwer Construction, Inc., which the trial court granted.[4] Witwer moved to quash the subpoenas or limit the scope of document production and deposition length. On July 2, the

---

[3] According to Lutheran, "Kelley and Surack each had direct knowledge of Bauer's attempts to sell LHN without the knowledge or consent of its majority owner[,]" and "Surack employed Bauer, Mitson, and others upon leaving their employment with Lutheran, and gave them the use of an email server and office space to conduct their business, including the negotiation of a joint venture between Bauer and IU Health." Lutheran's Br. at 12 n.8.

[4] According to Lutheran, "Lutheran subpoenaed Witwer because the discovery process revealed that Bauer had regularly communicated with Witwer concerning his secret plan to force a sale of LHN." Lutheran's Br. at 13 n.9.

trial court issued an order limiting the deposition time and scope of document production for Witwer, Kelley, Garver, Mitson, and Dr. Randolph. On July 24, Lutheran filed a motion for rule to show cause regarding Dr. Randolph's failure to comply with his subpoena. On August 17, after a hearing, the trial court ordered Dr. Randolph to provide responsive documents.

[12] On September 21, Lutheran filed a motion for authorization to serve subpoenas for testimony and documents on non-parties Andrea Schenkel and her son William Schenkel IV, former Lutheran employees whom Bauer had recruited to join him at IU Health. IU Health moved for a protective order on the basis that the scope of document production for the Schenkels should have limits similar to those for Dr. Randolph. The trial court issued a protective order on October 18 and authorized the issuance of the subpoenas on October 31.

[13] On November 2, Lutheran filed a motion for authorization to serve a subpoena for testimony and documents on non-party Darrick Hoopingarner, who allegedly had information regarding Sajin Young's identity and activities; the trial court granted the motion on November 9. On November 13, the Schenkels filed a motion to quash their depositions and asked that Lutheran "be ordered to pay all fees associated with the subpoenas upon their presentment to this court." Lutheran's App. Vol. 7 at 147. No specific basis was cited for this request. On November 14, Hoopingarner filed a motion to quash his subpoena and deposition, which the trial court granted that same day.

[14] On November 23, a Fort Wayne newspaper published a letter to the editor from former LHN hospital employee Craig Sorg; pursuant to a settlement agreement with Lutheran, Sorg admitted in the letter to creating and posting statements under the Sajin Young Facebook profile. Sorg was represented by attorney Mark GiaQuinta, who has also represented Kelley, Surack, Sweetwater Sound, Witwer, Witwer Construction, the Schenkels, Hoopingarner, and Garofola (collectively "the Non-Parties"), as well as Dr. Cast and NICHE.

[15] On November 27, Lutheran and Bauer filed a proposed agreed order of voluntary dismissal in the Tennessee court. On November 29, Dr. Cast, NICHE, Kelley, Surack, Sweetwater Sound, Witwer, Witwer Construction, and the Schenkels filed in the trial court a petition for attorneys' fees that cites *Himsel v. Indiana Pork Producers Ass'n*, 95 N.E.3d 101 (Ind. Ct. App. 2018), which contains an extensive discussion of Indiana Trial Rule 34(C)(3); we address that rule more fully below. Counsel attached designated evidence and a fee affidavit to the motion; some of the fees are for deposition preparation and attendance. *See, e.g.*, Lutheran's App. Vol. 8 at 27 (Kelley's fee statement).

[16] On November 30, the Tennessee court entered an agreed order of voluntary dismissal, pursuant to which Lutheran's breach of contract and tortious interference claims against Bauer were dismissed with prejudice and the defamation claim was dismissed without prejudice. That same day, Lutheran filed in the trial court a notice of dismissal requesting the termination of the ancillary proceeding.

[17] On December 3, Mitson filed a petition for attorneys' fees that specifically cites Trial Rule 34(C)(3); counsel attached a fee affidavit and a billing statement to the petition. On December 6, the Non-Parties filed an amended petition for attorneys' fees that specifically mentions Trial Rule 34(C)(3). Dr. Cast and NICHE moved to withdraw their fee petition based on their stated "desire to maintain journalistic neutrality in this matter." Lutheran's App. Vol. 8 at 75. On December 12, IU Health filed a motion for attorneys' fees and costs pursuant to Trial Rule 34(C)(3), seeking compensation for the time spent reviewing and responding to subpoenas served on its employees, who had retained separate counsel; counsel attached a fee affidavit and a billing statement to the motion.

[18] On December 14, Lutheran filed an objection to the fee petitions, asserting that the trial court lacked jurisdiction to hear the petitions due to the termination of the Tennessee lawsuit; that Appellees waived their opportunity to seek fees because their petitions were untimely; that Trial Rule 34(C)(3) does not apply to subpoenas from out-of-state courts or allow recovery of deposition-related fees; that IU Health lacked standing to seek fees and costs; and that Appellees had failed to establish that the requested fees are reasonable. Lutheran's objection states, "Should the Court find that it has jurisdiction, and that [Appellees] have a basis for relief, [Lutheran requests] an opportunity to more fully address the numerous deficiencies and issues raised by the lengthy time submissions appended to each of the Petitions." Lutheran's App. Vol. 9 at 22-23.

[19] On December 17, the trial court held a hearing on the fee petitions. Lutheran requested an opportunity to review Appellees' billing statements and "highlight" their purported unreasonableness for the court. 12/17/18 Tr. Vol. 2 at 37. The court stated that it would allow counsel to file briefs on the issues of jurisdiction, waiver, and standing. On February 5, 2019, Lutheran filed a motion to dismiss the fee petitions in which it stated, "If the Court determines that it has jurisdiction to grant [Appellees'] Petitions, Lutheran respectfully request[s] discovery and briefing to address the time entries submitted in support of [Appellees'] applications." Lutheran's App. Vol. 10 at 173. On February 13, the trial court held another hearing at which it stated, "What [Lutheran] said is I don't have jurisdiction to hear this. Well, we're going to hear that argument today. I'm not going to rule on that [i.e., jurisdiction] today and then bring everybody back if I decide that I do have jurisdiction. So I'm going to hear that argument, take that under advisement, and then we're going to talk about the balance of the case." 2/13/19 Tr. Vol. 2 at 9-10. The reasonableness of the requested fees was not discussed at the hearing.

[20] On February 18, the trial court issued a twenty-page order granting the fee requests. The court observed that it had "issued no less than thirty-six (36) Orders arising out of the ancillary proceeding." First Appealed Order at 2. The court set forth much of the foregoing procedural history and further stated,[5]

---

[5] Here, and elsewhere, we have replaced references to "Plaintiffs" with "Lutheran" where appropriate.

Lutheran and Bauer were involved in a lawsuit for well over a year. Lutheran's claims against Bauer ranged from allegations of Bauer's breach of contract, breach of non-solicitation agreement, and a request for injunctive relief to an obsessive search for a cyber blogging individual or individuals by the name of "Sajin Young." The Indiana Non-Parties, as demonstrated above, were required to endlessly search for information, communication, documents and emails with respect to the identity of the elusive "Sajin Young," who Lutheran believed was singlehandedly bringing about the demise of Lutheran. The Non-Parties were subjected to hours-long depositions and multiple repetitive subpoenas.

The Non-Parties selected by Lutheran included not only individuals who were previous employees of the Lutheran Health Network, but also members of Lutheran's own volunteer Board of Directors. Lutheran sought out corporations and individuals who constructed buildings for Lutheran and/or I.U. Health.

Once evidence was presented to the Court that Lutheran was conducting depositions that exceeded eight (8) hours, the Court limited future depositions to two (2) or three (3) hours. This Court was asked to intercede during the deposition of Witwer, who had constructed a building for one of Lutheran's competitors. William Schenkel and his mother Andrea Schenkel were required to conduct searches through a year of personal emails. Their Motions to Quash and Request for Protective Order were still pending when Lutheran dismissed the Tennessee lawsuit. The amount of time and effort the Non-Parties expended on Lutheran's relentless search for "Sajin Young" was immense. Allen County was not the only venue where ancillary proceedings were initiated. Seeking the same type of information, Lutheran initiated ancillary proceedings in Wisconsin and in Marion County, Indiana. The Non-Parties could never have navigated Lutheran's discovery demands of voluminous documents and other information on their own.

> Issues of relevance, confidentiality and privilege existed. As a result, substantial attorneys' fees were incurred.

*Id*. at 8-10.

[21] The trial court determined that it had jurisdiction to rule on the fee petitions; that Appellees are entitled to fees under Trial Rule 34(C)(3); and that IU Health has standing to request fees and costs under that rule. The order granted the Non-Parties' requests for fees and IU Health's request for fees and costs and also granted Appellees seven days to file supplemental fee petitions, which they did. On March 8, the trial court issued a second order granting the supplemental fee petitions and ordering Lutheran to pay the following amounts:

| | |
|---|---|
| Joseph Oscar Mitson | $51,069.73 |
| Thomas Kelley | $31,962.61 |
| Charles Surack and Sweetwater Sound, Inc. | $32,807.21 |
| Kyle Witwer and Witwer Construction, Inc. | $20,072.10 |
| Andrea Schenkel | $16,852.25 |
| William Schenkel | $15,362.25 |
| Darrick Hoopingarner | $ 8,580.25 |
| Aaron Garofola | $ 5,225.25 |
| I.U. Health (Attorney's Fees) | $91,497.50 |
| I.U. Health (Costs) | $ 2,499.51 |

Second Appealed Order at 2.

[22] Lutheran now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – The trial court did not lack jurisdiction to award attorneys' fees and costs.

[23] Lutheran first contends that the trial court lacked jurisdiction to award attorneys' fees and costs, citing *Dean v. Weaver*, 928 N.E.2d 254 (Ind. Ct. App. 2010), *trans. denied*. In that case, Kristine Weaver filed a divorce proceeding against her husband Loren in Michigan. Loren disclosed as a possible expert witness the couple's accountant, Ronald Dean, an Indiana resident. Pursuant to a Trial Rule 28(E) ancillary proceeding initiated by Loren in Elkhart Superior Court in Indiana, Weaver deposed Dean in early January 2009. In late January, the Weavers informed the Michigan court that they had reached a settlement, and on February 6, that court entered a final property settlement order. On March 16, Dean billed Weaver over $3000 for the deposition. On March 20, the Elkhart Superior Court noted that the divorce had been settled and dismissed the ancillary proceeding. Weaver refused to pay Dean, so on August 24, Dean petitioned the Elkhart Superior Court to reopen the proceeding to allow him to collect expert witness fees and attorney fees; Dean's basis for seeking attorney fees is not specifically mentioned in the opinion. The court initially granted the petition, but in response to Weaver's argument that the court lacked jurisdiction over the matter, the court ruled that "the dismissal of the ancillary proceeding in Indiana terminated [its] judicial power to deal with the parties named in that action[.]" *Id.* at 256.

Dean appealed, arguing that because the Elkhart Superior Court "had established independent jurisdiction over the persons and subject matter, its authority [was] not derivative of the Michigan trial court that had jurisdiction over the divorce proceedings." *Id.* Another panel of this Court stated,

> As the discovery proceedings in Indiana aid the principal cause instituted outside of Indiana, proceedings under Indiana Trial Rule 28(E) are properly characterized as ancillary proceedings. Because ancillary proceedings aim to further a principal proceeding, they can only exist by virtue of the main cause of action—without the main cause of action, they would not be required. Here, an Indiana trial court was requested to help a party in a divorce proceeding which was commenced in Michigan to pursue discovery in Indiana. As such, the Indiana trial court acquired its jurisdiction by virtue of the Michigan cause.
>
> Furthermore, pursuant to Indiana Trial Rule 28(E), this jurisdiction was limited to providing assistance in discovery issues—ordering a person to give testimony or statement, or to produce documents or other things, allow inspections and copies and permit physical and mental examinations for use in a proceeding in a tribunal outside this state. Based on the unambiguous and narrow language of the Trial Rule, this jurisdiction does not expand to disputes over expert witness fees. Therefore, we find that the Indiana trial court which had acquired restrictive jurisdiction pursuant to Indiana Trial Rule 28(E) to conduct ancillary discovery proceedings, lacks the jurisdiction to reopen the cause and hear Dean's motion on the payment of his fees.
>
> Even if we were to consider the payment of attorney fees to be an issue intrinsically bound to the discovery proceeding commenced under Indiana Trial Rule 28(E), we would still reach the same result. Dean filed his motion for payment of attorney fees after

[Weaver] and Loren entered into a divorce settlement. Thus, because the Michigan cause was settled and an order was issued prior to Dean filing his motion for payment of attorney fees, Michigan's jurisdiction ended and consequently, Indiana's derivative jurisdiction to conduct the ancillary proceedings pursuant to Indiana Trial Rule 28(E) extinguished at that moment as well.

*Id.* at 257-58 (citation omitted).

[25] Here, Lutheran argues that "[w]hen the underlying action in Tennessee was dismissed, the trial court's ancillary jurisdiction was terminated as a matter of law. The trial court had ancillary jurisdiction only by virtue of the Tennessee case. Without it, the trial court was powerless." Lutheran's Br. at 28-29.

[26] "A court's jurisdiction either exists or does not, and the question of a court's jurisdiction is accordingly a question of law that is not entrusted to the trial court's discretion. Rather, it is reviewed de novo." *In re Paternity of M.R.*, 778 N.E.2d 861, 863 (Ind. Ct. Ap. 2002), *clarified on reh'g*, 784 N.E.2d 861, *trans. dismissed* (2003). Assuming for argument's sake that Lutheran's (and the *Dean* panel's) description of and reliance on jurisdictional concepts are appropriate,[6] we find *Dean* distinguishable, for three reasons. First, multiple discovery

---

[6] The Non-Parties argue that *Dean*'s jurisdictional analysis was called into question, if not implicitly overruled, by *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453 (Ind. 2012), in which our supreme court stated that "jurisdictional concepts are simply the wrong analytical tools for determining whether an Indiana trial court's post-judgment action [in that case, ruling on a fee petition based on a fee-shifting statute for frivolous lawsuits] was a valid exercise of its authority" and that "the question … is one of procedural error, not jurisdiction." *Id.* at 458.

matters, including several fee petitions and the Schenkels' motion to quash their depositions, were pending in the ancillary proceeding in this case when the primary proceeding was terminated;[7] it would be absurd to hold that "any issue pending before the ancillary tribunal, no matter how ripe for decision, cannot proceed once the main cause is dismissed[,]" as the Non-Parties put it. Non-Parties' Br. at 22. Second, the trial court in this case did not dismiss the ancillary proceeding, precisely because several ripe issues remained pending before it. And third, Appellees are seeking attorneys' fees for responding to discovery requests, not expert witness fees, which Dean should have sought from Weaver in a separate breach-of-contract action. In other words, as the Non-Parties point out, Appellees "do not have another method of recovery available to them." *Id*. at 19. Based on the foregoing, we conclude that the trial court did not lack jurisdiction to award attorneys' fees and costs.

---

[7] The trial court found that "[t]he Non-Parties had no clue that their window of time for filing requests for attorneys' fees was coming to an abrupt end. Indeed, Lutheran led the Non-Parties and I.U. Health down the 'primrose path.'" First Appealed Order at 15. Lutheran has asserted that counsel GiaQuinta was aware of the impending settlement; GiaQuinta has asserted otherwise. *See* 2/13/19 Tr. Vol. 2 at 27 ("I didn't know what was going on with Bauer. I knew – I knew that there was settlement discussions going on. I didn't know – I wasn't a party to those and I didn't wanna be."). Lutheran has also asserted that IU Health was aware of the impending settlement "as Bauer's employer and litigation financier[,]" pointing to a November 21, 2018 email from IU Health's counsel in which she "communicated that she had 'learned of a resolution' of the Tennessee action." Lutheran's Reply Br. at 20. That email is directed to Lutheran's counsel, who failed to "confirm this matter has been resolved and dismissed" as IU Health's counsel had requested. Lutheran's App. Vol. 10 at 155.

## Section 2 –The trial court did not err in ruling that Appellees are entitled to attorneys' fees pursuant to Trial Rule 34(C)(3).

[27] Next, Lutheran argues that the trial court erred in ruling that Appellees are entitled to attorneys' fees pursuant to Trial Rule 34(C)(3). Trial Rule 34 is entitled, "Production of Documents, Electronically Stored Information, and Things and Entry Upon Land for Inspection and Other Purposes." Subsection (C) of the rule is entitled "Application to Non-Parties" and reads in relevant part as follows:

> (1) A witness or person other than a party may be requested to produce or permit the matters allowed by subsection (A) of this rule.[8] Such request shall be served upon other parties and included in or with a subpoena served upon such witness or person.
>
> ….
>
> (3) The request shall contain the matter provided in subsection

---

[8] Trial Rule 34(A) reads in relevant part as follows:

**(A) Scope.** Any party may serve on any other party a request:

(1) to produce and permit the party making the request, or someone acting on the requester's behalf, to inspect and copy, any designated documents or electronically stored information … or to inspect and copy, test, or sample any designated tangible things which constitute or contain matters within the scope of Rule 26(B) and which are in the possession, custody or control of the party upon whom the request is served ….

(B) of this rule.[9]  It shall also state that the witness or person to whom it is directed is entitled to security against damages or payment of damages resulting from such request and may respond to such request by submitting to its terms, by proposing different terms, by objecting specifically or generally to the request by serving a written response to the party making the request within thirty (30) days, or by moving to quash as permitted by Rule 45(B).  Any party, or any witness or person upon whom the request properly is made may respond to the request as provided in subsection (B) of this rule.  If the response of the witness or person to whom it is directed is unfavorable, if he moves to quash, if he refuses to cooperate after responding or fails to respond, or if he objects, the party making the request may move for an order under Rule 37(A) with respect to any such response or objection.  In granting an order under this subsection and Rule 37(A)(2)[10] the court shall condition relief

---

[9] Trial Rule 34(B) reads in relevant part as follows:

> **(B) Procedure.**  The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.  The request shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity….  The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts ….
>
> The party upon whom the request is served shall serve a written response within a period designated in the request, not less than thirty [30] days after the service thereof or within such shorter or longer time as the court may allow.  The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless it is objected to, … in which event the reasons for objection shall be stated….  The party submitting the request may move for an order under Rule 37(A) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested.

[10] Trial Rule 37(A)(2) reads in relevant part as follows:

> If … a party or witness or other person, in response to a request submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request.  When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order.
>
> If the court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(C).

upon the prepayment of damages to be proximately incurred by the witness or person to whom the request is directed or require an adequate surety bond or other indemnity conditioned against such damages. Such damages shall include reasonable attorneys' fees incurred in reasonable resistance and in establishing such threatened damage or damages.

Trial Rule 45(B) provides,

A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may

(1) quash or modify the subpoena if it is unreasonable and oppressive or

(2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things.

[28] Lutheran's argument is threefold: (1) Trial Rule 34(C)(3) is inapplicable to this ancillary proceeding; (2) even if the rule is applicable, Appellees' fee petitions were untimely; (3) even if the petitions were not untimely, Appellees are not entitled to fees related to preparing for and attending depositions. In addressing Lutheran's argument, "we are mindful of the rules of statutory construction, which are applicable to the interpretation of trial rules." *Carter-McMahon v. McMahon*, 815 N.E.2d 170, 175 (Ind. Ct. App. 2004). "Thus, as with statutes, our objective when construing the meaning of a rule is to ascertain and give

effect to the intent underlying the rule." *Id*. "If the language of a rule is clear and unambiguous, it is not subject to judicial interpretation. Moreover, in construing a rule, it is just as important to recognize what it does not say as it is to recognize what it does say." *Id*. (citation omitted). "We are also mindful that the Rules of Trial Procedure are to be construed together and harmoniously if possible." *Id*. (citation and quotation marks omitted). We review de novo questions involving the interpretation of the Indiana Trial Rules. *Health & Hosp. Corp. of Marion Cty. v. Foreman*, 51 N.E.3d 317, 318 (Ind. Ct. App. 2016).

### 2.1 –Trial Rule 34(C)(3) applies to this proceeding.

[29] The trial court noted that Trial Rule 28(E) "specifically provides" that to the extent that a discovery order in an ancillary proceeding "does not prescribe otherwise, the practice and procedure shall be in accordance with that of the court of this state issuing the order." First Appealed Order at 15. The court further noted that its "original Order commencing the ancillary proceedings" (not to mention its subsequent discovery orders) "did not prescribe that Tennessee rules of procedure would apply" and concluded that, "[a]s a result, all of the Indiana Rules of Trial Procedure apply." *Id*. at 15, 16. We agree. Lutheran insists that Trial Rule 34(C)(3) "governs the procedure of document production requests to nonparties in cases *originating in Indiana courts*." Lutheran's Br. at 32. But, as the Non-Parties point out, nothing in Trial Rule 34 "limits its application to nonparties being served by in-state litigants, and there is no compelling reason why a nonparty served a subpoena from out-of-state should be somehow less protected than a nonparty served a subpoena

from in-state." Non-Parties' Br. at 28.[11] *See In re WTHR-TV*, 693 N.E.2d 1, 6 (Ind. 1998) ("[W]here non-parties to a dispute are involuntarily dragged into court their interest in being left alone is a legitimate consideration in this balancing [of the need for information and the burden of supplying it] and they are no less entitled to *any protections* the Trial Rules afford.") (emphasis added).

### 2.2 –*Appellees' fee petitions were not untimely.*

[30] Lutheran argues that even if Trial Rule 34(C)(3) applies, Appellees "waived their ability to seek attorneys' fees under that rule because they failed to request those fees at the time they resisted the subpoenas, as required by the rule." Lutheran's Br. at 33. In its order, the trial court stated,

> Here, all of the Non-Parties and I.U. Health were still preparing for depositions and hearings and gathering information pursuant to Lutheran's discovery demands when Lutheran terminated the Tennessee lawsuit. None of the Non-Parties and I.U. Health knew the extent of what their final attorneys' fees and costs would be. To continually return to this Court to seek additional security each time a new subpoena was issued would have been an unreasonable waste of time and judicial resources. Non-Parties and I.U. Health did not waive their right to seek costs and attorneys' fees by not seeking security each time Lutheran made a new discovery demand.

First Appealed Order at 16.

---

[11] The Non-Parties also point out that Lutheran availed itself of other Indiana trial rules, such as when it noticed a Trial Rule 30(B)(6) deposition of an IU Health representative in the Marion Superior Court ancillary proceeding and sought relief under Trial Rule 37 during Witwer's deposition.

Contrary to what Lutheran suggests, Trial Rule 34(C)(3) simply does not require a non-party to request fees and costs at the time it moves to quash or objects to a subpoena.[12] The onus is on the trial court to "condition relief upon the prepayment of damages[,]" and the trial court did not do so here. As the court's order indicates, prepayment would have been impossible in any event because none of the Appellees knew what their fees and costs would ultimately be. *Cf. R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 460 (Ind. 2012) (referring to post-judgment request for attorneys' fees under fee-shifting statute for frivolous lawsuits: "A request for attorneys' fees almost by definition is not ripe for consideration until after the main event reaches an end. Entertaining such petitions post-judgment is virtually the norm."). In short, Appellees' fee petitions were not untimely.

### *2.3 – Appellees are entitled to fees related to preparing for and attending depositions.*

Finally, Lutheran argues that Appellees are not entitled to fees related to preparing for and attending depositions because Trial Rule 34(C)(3) does not allow for them. In its order, the trial court stated,

> The Indiana Trial Rules anticipate that witnesses will be required
> to seek the advice of attorneys regarding document preparation
> pursuant to a subpoena duces tecum. Here, production was
> always inextricably tied to an accompanying deposition. In a
> 2018 Court of Appeals' case, the Court recognized the burdens

---

[12] Neither does Trial Rule 45(B); it says only that the trial court "may" condition denial of a motion to quash upon the advancement of the reasonable cost of production of the requested items.

thrust upon non-parties. *Himsel v. Ind. Pork Producers Association*, 95 N.E.3d 101 (Ind. Ct. App. 2018).

First and foremost, the Indiana Court of Appeals held that attorneys' fees, and not just costs, could be awarded to a non-party under the Indiana Rules of Court. *Id*. at 115. In that case, the Court noted the wide breadth of documents sought by the plaintiffs. *Id*. at 111. The Court found that the plaintiffs had already acquired substantial evidence from other sources regarding the discovery sought from the non-parties. *Id*. The Court noted the "sheer breadth of records" and subpoenas that the plaintiffs asked the nonparties to comb through required legal assistance. *Id*. The discovery requests were unreasonably cumulative, duplicative and burdensome, as they were here. *See id*.

The Court of Appeals specifically held:

> Nonparties subjected to subpoenas may reasonably be expected to consult with counsel to ensure compliance with the subpoena without necessarily divulging privileged information or to determine whether there is any legal basis to object to the subpoena.…"

*Id*. at 113.

First Appealed Order at 17.

[33] Simply because Trial Rule 34(C)(3) does not specifically mention depositions does not mean that deposition-related fees are prohibited by the rule. Here, as the trial court noted, the document requests were "inextricably tied" to accompanying depositions, both of which were authorized pursuant to Trial

Rule 28(E). It was reasonable for the witnesses to be expected to consult with counsel to ensure compliance with the subpoenas as to the production of both documents and testimony, and therefore we conclude that Appellees are entitled to fees related to preparing for and attending depositions.

## Section 3 – The trial court did not err in ruling that IU Health has standing to seek attorneys' fees and costs under Trial Rule 34(C)(3).

[34] Lutheran also contends that the trial court erred in ruling that IU Health has standing to seek attorneys' fees and costs under Trial Rule 34(C)(3). The trial court made the following findings on this issue:

> [A]s a result of Lutheran's behavior, I.U. Health was forced to intervene in the Allen County proceedings. The discovery demanded from different Non-Parties oftentimes sought the same information previously produced by other parties and/or Non-Parties. The information sought in Allen County included discovery already in the hands of Lutheran. Lutheran's discovery relating to I.U. Health began in Marion County. Originally, Lutheran served subpoenas on I.U. Health on a broad range of topics. The Marion County court narrowed the scope of the requests. As a result, Lutheran attempted to seek from I.U. Health employees in Allen County the same discovery struck by Marion County. Lutheran served subpoenas on a number of I.U. Health employees residing in Allen County. Oftentimes, the subpoenas served in Allen County requested those individuals to produce documents quashed in Marion County. As a result, I.U. Health was required to intervene in these proceedings and constantly monitor the discovery sought here. Thus, in addition to all of the Non-Parties, I.U. Health has standing to seek attorneys' fees and costs pursuant to Rule 34(C)(3).

*Id*. at 18.

Lutheran makes the following argument:

> An intervenor is a "party." *Cf.* Ind. Trial Rule 3.1(C) ("At the time the first matter is submitted to the court seeking to intervene in a proceeding, the attorney representing the intervening party or parties, or the intervening *party* or parties, if not represented by an attorney, shall file an appearance.…") (emphasis added)). The trial court's December 14, 2017, order granting IU Health's motion to intervene acknowledged that, at that time, the only "nonparties" to the ancillary proceeding were NICHE, Cast, Garofola, and Mitson.
>
> Trial Rule 34(C)(3) is titled "Application to Non-parties" and allows nonparties served with records subpoenas to recover as "damages" their "reasonable attorneys' fees incurred in reasonable resistance" to the document production aspect of the subpoenas. Ind. Trial Rule 34(C)(3). By its very definition, Trial Rule 34(C)(3) is inapplicable to intervening parties like IU Health.
>
> What is more, Rule 34(C)(3) gives only the witness or person **to whom** a subpoena is issued an opportunity to seek costs resulting from such document requests. *See* Ind. Trial Rule 34(C)(3) (only a "witness or person to whom the [document production request] is directed" may seek "security against damages or prepayment of damages resulting from such request.…"). Lutheran never served IU Health with any document production requests in the trial court. The trial court accordingly erred in determining that a party who had not been served with any discovery requests should be treated as a nonparty who had.

Lutheran's Br. at 42-43 (citation to appendix omitted).

[36] We disagree, for several reasons. First, Lutheran fails to explain how an intervenor can be a party to a non-party proceeding. Second, Lutheran did not object to IU Health's motion to intervene. And third, as IU Health observes,

> Lutheran continually argued at each of the hearings and disputes involving IU Health's employees that the subpoenas on the employees should include documents and information in the possession of IU Health by virtue of the employees' status in the organization. The Court agreed and ordered that the documents and information be produced despite where it may have resided. Thus, IU Health has not been awarded fees as an intervenor; the fees and costs are solely those it incurred because it was not a party to the litigation.… Its fees were generated on behalf of non-party discovery served and court orders issued.

IU Health's Br. at 22-23. Consequently, we affirm the trial court's ruling on this issue.

## Section 4 – Remand is appropriate to give Lutheran an opportunity to challenge the reasonableness of Appellees' requested attorneys' fees.

[37] Where, as here, the amount of an attorneys' fee award is not inconsequential, "there must be objective evidence of the nature of the legal services and the reasonableness of the fee." *Stewart v. TT Comm. One, LLC*, 911 N.E.2d 51, 59 (Ind. Ct. App. 2009), *trans. denied*. Lutheran argues, and we agree, that it was never given an opportunity to challenge the reasonableness of Appellees' requested fees "once the court determined that it had jurisdiction." Lutheran's

Reply Br. at 33.[13]  Accordingly, we remand with instructions to give Lutheran that opportunity.[14]

[38]     Affirmed in part and remanded.

Baker, J., and Altice, J., concur.

---

[13] Appellees' claims that Lutheran never challenged the reasonableness of their fee requests and that the trial court provided Lutheran "ample opportunity to address this issue" are unsupported by the record.  Non-Parties' Br. at 32-33.

[14] Mitson argues that we should also "remand this matter to the trial court for a determination of appellate attorneys' fees to be awarded to [Appellees]."  Mitson's Br. at 44.  This argument is based on *Hastetter v. Fetter Properties, LLC*, 873 N.E.2d 679, 685 (Ind. Ct. App. 2007), which, as Mitson himself acknowledges, states that "one is entitled to attorney fees when provided for by statute or contract."  Mitson cites no statute or contract to justify his request for appellate fees.